**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

WERNER MEJIA LIMA,

       Plaintiff-Counterclaim Defendant,       **REPORT AND RECOMMENDATION**

       v.                                   **19-CV-1699 (JMA) (ST)**

PAUL NAPOLI and MARIE NAPOLI,

       Defendants-Counterclaimants.
------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

Plaintiff Werner Mejia Lima ("Plaintiff") brought an action against Paul Napoli and Marie Napoli ("Defendants-Counterclaimants") alleging, *inter alia*, failure to pay overtime violations under both the Fair Labor Standard Act ("FLSA") and New York labor Law ("NYLL"). Defendants-Counterclaimants alleged counterclaims of breach of contract, unjust enrichment/restitution, breach of the implied covenant of good faith, and conversion. Now before this Court is Defendants-Counterclaimants' Motion for Summary Judgment and Sanctions ("Motion").

The Honorable Joan M. Azrack referred Defendants-Counterclaimants' Motion to the undersigned to issue a Report and Recommendation.

For the below stated reasons, this Court respectfully recommends that Defendants-Counterclaimants' Motion for Summary Judgment be granted with respect to Plaintiff's Amended Complaint, that the District Court decline to exercise supplemental jurisdiction over Defendants' counterclaims and that Defendants-Counterclaimants' Motion for Sanctions be denied.

1

## I.      BACKGROUND

### A.  Plaintiff's Handyman Services in and Around Long Island, New York

Plaintiff was born and raised in Guatemala, and moved to the United States on a full-time basis in May 2009.  *See* Pl. R. 56.1 Counterstatement ¶¶ 1-2, ECF 64.  Plaintiff used several different names, including Werner Marcony Mejia Lima, Werner Mejia, Werner Mejia Lima, and Carlos Lima, which is his brother's name.  *Id.* at ¶ 3.

After moving to the United States, Plaintiff performed handyman services and, by June 2013, had approximately 35 to 40 clients in or around Long Island, New York.  *Id.* at ¶ 4.  Plaintiff identified himself as Carlos Lima to his customers.  *Id.* at ¶ 5.  Plaintiff's clients provided him with lists of specific handyman tasks to complete at their residences.  *Id.* at ¶ 7.  When performing handyman services, Plaintiff hired his own helpers.  *Id.* at ¶ 8.  Plaintiff also set his rate of pay at $35.00 per hour for his 35-plus clients.  *Id.* at ¶ 6.

### B.  Plaintiff's Handyman Services to Defendants-Counterclaimants

Defendants-Counterclaimants engaged several individuals and tradespeople to perform work at their three residences, including for painting, plumbing, construction, and electrician work. *Id.* at ¶ 10.  In or around the summer of 2013, two of Plaintiff's clients referred him to Defendant-Counterclaimant Marie Napoli, who was looking for a handyman.  *Id.* at ¶ 14.

Mrs. Napoli provided Plaintiff's telephone number to Total Personal Services Administrative Group ("TPS"), a third-party administrative company that Defendants-Counterclaimants used to pay bills and schedule services in their homes.  *Id.* at ¶ 15.  Stacey Meyer ("Ms. Meyer") from TPS contacted Plaintiff about performing handyman services, and Mrs. Napoli met Plaintiff at her house to see the work she needed done.  *Id.* at ¶ 16.  At their first meeting, Plaintiff introduced himself as "Carlos Lima" (Plaintiff's brother's name) and showed

Mrs. Napoli an employment identification card with the name Carlos Lima, accompanied by a picture of his brother. *Id.* at ¶¶ 3, 18.

Plaintiff began performing handyman services for Defendants at their Brookville, New York home, and later at their home in Quogue and apartment in Manhattan. *Id.* at ¶ 19. While Ms. Meyer or Mrs. Napoli gave Plaintiff lists of specific items or tasks to perform, *see. id.* at ¶ 20, Plaintiff was "free to decline work." Pl Dep. Tr. at 237:12-16, ECF 62-1. Plaintiff's tasks included painting, carpentry, power washing, acid cleaning, fixing a roof requiring special sealant, fixing a wall which required replacement of sheetrock and plaster, installing special insulation, and grouting bathrooms. Pl. Dep. Tr. at 173:20-174:7, ECF 62-1; Marie Napoli Dep. Tr. at 178:13-182:3, ECF 65-2; Aaron Warshaw Decl., Ex. E, at P32, P341- P343, ECF 62-2.

Plaintiff "set his rate of pay" of $45 for the Quogue and the Manhattan properties Pl. Dep. Tr. at 136:5-21, ECF 62-1. Additionally, while Plaintiff initially charged $25 per hour for the Brookville property, Plaintiff "ask[ed] for an increase" to $35 after three to four months, which he obtained. *Id.* at 135:9-136:4. Defendants-Counterclaimants, through TPS, would also reimburse Plaintiff for materials or other items he purchased to complete the tasks that Defendants-Counterclaimants requested. Pl. R. 56.1 Counterstatement ¶ 25, ECF 64.

Mrs. Napoli requested that Plaintiff work on specific days/times on several occasions, such as when Defendant-Counterclaimants were hosting a party or had another other event occurring. *See* Michael Taubenfeld Declaration, Ex. at 1 P25, P34, P108, P265, P285; Ex. 8 at P512., ECF 65. On another instance, Defendants-Counterclaimants sent Plaintiff home for the day when Paul Napoli was trying to avoid service of process in a business dispute. *See* Michael Taubenfeld Declaration, Ex. at 1 P62-63, ECF 65. However, in general, Plaintiff "came and went as [he] pleased" from Defendant-Counterclaimants' homes while having "access to everything" he needed

on the days he worked.  Pl Dep. Tr. at 238:16-18, ECF 62-1.  Additionally, sometimes Plaintiff declined to work on specific days due to having other clients, *see id.* at 238:10-15; chose not to work on certain weekends; *id.* at 152:6-16, and indicated he that planned to work in specific locations on certain days "based upon [his] schedule." *Id.* at 153:21-154:2.

Once Plaintiff completed a list of tasks, he would wait to receive a subsequent one.  *Id.* at 167:5-15.  There were periods of days, and sometimes weeks, between when Plaintiff would receive his next lists of tasks.  *Id.* at 161:19-162:10; 167:13-15, 167:19-168:21.  As Plaintiff worked, Mrs. Napoli communicated with Plaintiff, but would not "hover[] over [Plaintiff's] shoulder" as he completed his tasks.  *Id*. at 236:20-24.

Tradespeople and individuals who came to Defendants' homes – such as a trainer, therapist, or nurse – clocked in and out of a timekeeping system so that TPS could track and pay their bills.  Pl. R. 56.1 Counterstatement ¶ 36, ECF 64.  In 2013, Plaintiff kept track of his hours and would report them to Ms. Meyer or Mrs. Napoli, just as he did with his other clients.  *Id.* at ¶ 37.  In or around 2014, Mrs. Napoli set up finger scanners for security purposes and to track the hours of the tradespeople and others that performed work inside her Brookville and Quogue homes, including Plaintiff.  *Id.* at ¶ 38.  Per the finger scanner records, Plaintiff scanned in to perform work at different times ranging from 7 A.M. to 1 P.M., though Plaintiff typically scanned in around 8:00 a.m. or 9:00 a.m.  *Id.* at ¶ 39.

When performing work for Defendants-Counterclaimants, Plaintiff used his own tools and hired his own helpers, including his stepson and friends of his stepson.  *Id.* at ¶¶ 41-42.  From July 2013 through May 2016, Mrs. Napoli would pay Plaintiff for the helpers' work directly and then Plaintiff would then pay his helpers.  *Id.* at ¶ 45.  From May 2016 onward, after Mrs. Napoli began suspecting that Plaintiff was padding his hours, Mrs. Napoli directed Plaintiff's helpers to use the

finger scanner, or the helpers were paid based on Plaintiff's hours, and TPS issued each helper their own check after the helpers provided TPS with their rate of pay.  *Id.* at ¶¶ 46-47.

### C. Plaintiff's Services to Other Clients While Providing Services to Defendants-Counterclaimants

In addition to Defendants-Counterclaimants, Plaintiff had 30 to 35 other clients in June, 2013, *see* Pl Dep. Tr. at 151:4-7, ECF 62-1, and approximately 20 clients in 2014 through 2018. *Id.* at 177:6-10.  During this time, Defendants-Counterclaimants requested that Plaintiff give their tasks "preference."  *See* Marie Napoli Dep Tr. at 155:8-156:10, ECF 65-2.  However, Defendants-Counterclaimants never asked Plaintiff to "cancel other jobs."  *See* Pl Dep. Tr. at 183:14-16, ECF 62-1.  In the summer of 2018, Plaintiff had the opportunity to do many other jobs for himself, other clients, and another company.  *Id.* at 231:4-15.  Plaintiff has confirmed that he "never lost all of [his] clients" while working for Defendant-Counterclaimants.  *Id.* at 182:19-183:13.

### D. The Termination of Plaintiff's and Defendant-Counterclaimants' Relationship and Alleged Retaliation Leading up to Present Lawsuit

Plaintiff and Defendants-Counterclaimants' working relationship terminated in November 2018 based upon disputes regarding whether Plaintiff padded his hours and whether Plaintiff was entitled to overtime.   Pl. R. 56.1 Counterstatement ¶ 110, ECF 64; Michael Taubenfeld Declaration, Ex. at 1 P500-01, ECF 65-1.

On or about January 18, 2019, Plaintiff's counsel delivered a pre-litigation demand letter to Defendants-Counterclaimants' Brookville home.   Defs. Reply to Plaintiff's R. 56.1 Counterstatement ¶ 127, ECF 69.  On January 31, 2019, Paul Napoli contacted Plaintiff via text message stating that U.S. Immigration and Customs Enforcement ("ICE") was looking for Plaintiff and that Paul Napoli provided ICE with Plaintiff's address.  Paul Napoli Dep. Tr. at 141:2-11, ECF 65-5.  Plaintiff feared that ICE was searching for him and left his home.  Pl. Dep. Tr. at 245:3-6,

ECF 62-1. However, ICE never contacted Plaintiff and, to Plaintiff's knowledge, ICE never came to Plaintiff's house. Pl. Dep. Tr. at 245:24-246:6.

### E. Procedural History

On March 25, 2019, Plaintiff filed a Complaint against Defendants-Counterclaimants, which Plaintiff amended on July 2, 2019. ECF 1, 16. Plaintiff's Amended Complaint alleged: (1) FLSA Overtime Wage Violations; (2) NYLL Overtime Wage Violations; (3) NYLL Failure to Notify; (4) NYLL Retaliation; (5) FLSA Retaliation. *Id.*

On July 17, 2019, Defendants-Counterclaimants filed their Amended Answer and Counterclaims to Plaintiffs' Amended Complaint. ECF 17. Defendants-Counterclaimants alleged five counterclaims: (1) breach of implied contract; (2) unjust enrichment/restitution; (3) breach of the implied covenant of good faith; (4) conversion based upon Plaintiff's falsified hours and charging for services not performed; (5) conversion based upon Plaintiff taking possession of items owned by Defendants-Counterclaimants. *Id.*

On August 7, 2019, Plaintiff filed his Answer to Defendants-Counterclaimants Answer and Counterclaims. ECF 19.

On March 5, 2020, Defendants-Counterclaimants wrote to Plaintiff identifying post-deposition requests and deficiencies in Plaintiff's written productions, which remain outstanding. Pl. R. 56.1 Counterstatement ¶ 133, ECF 64. Discovery was scheduled to close on June 1, 2020. *Id.* at ¶ 134.

On April 22, 2020, Defendants-Counterclaimants wrote to Plaintiff's counsel and outlined the Defendants-Counterclaimants' perceived deficiencies in Plaintiff's claims and asked Plaintiff to voluntarily dismiss the Amended Complaint by April 24, 2020, which Plaintiff did not do. *Id.* ¶¶ 135-36.

6

On May 13, 2020, Defendants-Counterclaimants filed their Motion for Sanctions based upon Plaintiff's failure to withdraw his claims post-discovery and Plaintiff's denial of Defendants' counterclaims. ECF 40.[1] Plaintiff filed his Opposition on August 1, 2020. ECF 42.[2] Defendants-Counterclaimants filed their Reply on August 28, 2020. ECF 46.

On September 30, 2021, the Honorable Joan M. Azrack denied Defendants-Counterclaimants' Motion for Sanctions without prejudice and ordered that the motion should be addressed simultaneously with a properly briefed summary judgment motion, including Rule 56.1 statements. *See* ECF Minute Entry, dated September 30, 2021.

On November 3, 2022, the Honorable Joan M. Azrack referred the case to this Court for a Report and Recommendation as to Defendant-Counterclaimants' Motion for Summary Judgment and Sanctions. *See* ECF Minute Entry, dated November 3, 2022.

## II.    JURISDICTION

This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 201 et seq. (FLSA), 28 U.S.C. § 1337 (interstate commerce), and 28 U.S.C. § 1331 (original federal question jurisdiction). Supplemental jurisdiction over the New York State law claims is conferred by 28 U.S.C. § 1367(a), as such claims are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

## III.    LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law."

---

[1] Note, ECF 40 states that the Motion was entered on August 28, 2020, but the Motion itself is dated May 13, 2020.
[2] Note, ECF 42 states that the Opposition was entered on August 28, 2020, but the Motion itself is dated August 1, 2020.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A genuine dispute exists as to a material fact when "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  In determining whether a genuine dispute exists as to a material fact, the Court is required to "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted).  "If there is evidence in the record from which an inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper."  *Holt v. KMI-Cont'l*, 95 F.3d 123, 129 (2d Cir. 1996).

A "party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as mere "conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).  "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).  The moving party is entitled to judgment as a matter of law if the nonmoving party fails to "make a showing sufficient to establish the existence of [each] element essential to [his] case . . . since a complete failure of proof concerning an essential element of [his] case necessarily renders all other facts immaterial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## IV.    DISCUSSION

### A. This Court Recommends Granting Defendants-Counterclaimants Summary Judgment for Plaintiff's FLSA and NYLL Claims Because Plaintiff Was an Independent Contractor.

Plaintiff's first two claims allege FLSA and NYLL violations based upon overtime wage violations.  Because the record shows there is no dispute of material fact that Plaintiff was an

8

independent contractor, this Court recommends granting summary judgment in favor of Defendants-Counterclaimants. *See Browning v. Ceva Freight, LLC*, 885 F. Supp. 2d 590, 597 (E.D.N.Y. 2012) (noting that only employees are covered by the FLSA and the NYLL; independent contractors are not). "While the determination whether a worker is an employee or an independent contractor 'usually presents questions of fact sufficient to preclude summary judgment, where evidence is undisputed, and the facts are compellingly clear, the issue may be determined as a matter of law.'" *Meyer v. U.S. Tennis Ass'n*, No. 1:11-CV-06268 ALC, 2014 WL 4495185, at *5 (S.D.N.Y. Sept. 11, 2014), *aff'd*, 607 F. App'x 121 (2d Cir. 2015) (quoting *Sikorski v. Burroughs Drive Apartments, Inc*., 762 N.Y.S.2d 718, 721 (4th Dep't. 2003). This Court concludes the record is "compellingly clear" here.

### 1. **FLSA**

The FLSA defines an "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and, most unhelpfully, defines an "employer" circularly as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id*. § (203)(d); *see Landaeta v. N.Y. & Presbyterian Hosp., Inc*., No. 12–CV–4462 (JMF), 2014 WL 836991, at 3 (S.D.N.Y. Mar. 4, 2014). In assessing whether an individual is an employee under the FLSA, courts in this Circuit consider the following factors:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Brock v. Superior Care, Inc*., 840 F.2d 1054, 1058–59 (2d Cir. 1988); *see also Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 912 (S.D.N.Y. 2013). No single factor is dispositive; and the Court may consider any relevant evidence in the record. *Hart v. Rick's Cabaret Int'l, Inc.,* 967

9

F. Supp. 2d 901, 912 (S.D.N.Y.2013). "[T]he test is based on a totality of the circumstances" analysis targeted at whether the "workers depend upon someone else's business for the opportunity to render service or are in business for themselves." *Brock,* 840 F.2d at 1059; *see also Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730 (1947) ("[T]he determination of the relationship does not depend on such isolated factors but rather upon the circumstances of the whole activity.").

### a. Degree of Control

Plaintiff's control argument stems from the following contentions: (1) Defendants-Counterclaimants' put Plaintiff on "full-time payroll."  Opp. at 14, ECF 63; (2) Defendants-Counterclaimants "set Plaintiff's rate of pay."  *Id.*; (3) Plaintiff had to "swipe-in and out" each day; (4) Defendants-Counterclaimants "had control over Plaintiff's schedule."  *Id.* at 14-15; (5) Plaintiff obtained his work assignments, or "orders" from Defendants and Ms. Meyer, the employee at "the personal services company that worked for Defendants."  *Id.* at 15.  This Court concludes that none of these contentions preclude summary judgment.

First, Plaintiff admitted at his deposition that he never worked solely for Defendants-Counterclaimants.  Plaintiff had about 30 to 35 other clients in June, 2013, *see* Pl. Dep. Tr. at 151:4-7, ECF 62-1, and approximately 20 clients in 2014 through 2018.  *Id.* at 177:6-10.  Plaintiff "never lost all of [his] clients" while working for Defendant-Counterclaimants.  *Id.* at 182:19-183:13.  While Defendants-Counterclaimants requested Plaintiff to give their tasks "preference," *see* Marie Napoli Dep. Tr. at 155:8-156:10. ECF 65-2,  Defendants-Counterclaimants never asked Plaintiff to "cancel other jobs."  Pl. Dep. Tr. at 183:14-16, ECF 62-1.

The main communication Plaintiff relies upon for "full-time" argument is a text message dated January 31, 2018 in which Marie Napoli states: "We need you to find other work for you. We can't continue with you as full-time.  Need to just do the lists and find other jobs in between.

10

The number of hours you work are too high." Michael Taubenfeld Declaration, Ex. 1 at P365, ECF 65-1. Marie Napoli further stated: "Please try to find other jobs too. Or maybe we can agree on a flat salary for full-time." *Id*. Notably, the record shows Plaintiff was never placed on a flat rate salary.

Even if Plaintiff was "full-time," that does not preclude an independent contractor determination. In *Ivanov v. Builderdome, Inc.,* No. 19-CV-3422 (LJL), 2021 WL 2554620, at *10 (S.D.N.Y. June 22, 2021), the District Court held that Plaintiff was an independent contractor despite two years of work on a "full-time basis" because Plaintiff's "commitment was not that [she] was unable to enjoy other employment, and on her own schedule, at the same time she was performing work for Builderdome. She was free to, and did, continue to perform work for numerous others and at her own discretion while working for Builderdome." *Id.*[3] Here, there is no factual dispute that both before and after Mrs. Napoli sent the "full-time" text message on January 31, 2018, Plaintiff had about 20 *other clients* as discussed *supra*. In fact, on February 5, 2018, Plaintiff sent a text message to Ms. Anderson, one of his other clients, asking for client recommendations, stating "right now I do not have a job," further suggesting Plaintiff knew he did not work solely for Defendants-Counterclaimants. Pl. R. 56.1 Counterstatement ¶ 67, ECF 64.[4]

Turning to the next issue of Plaintiff's rate of pay, there is no factual dispute that Plaintiff "set his own pay" on multiple occasions with Defendants-Counterclaimants. Pl. Dep. Tr. at 135:10-136:21, ECF 62-1. Specifically, Plaintiff conceded at his deposition that he "set [his] rate of pay" of $45 for the Quogue and the Manhattan properties. *Id.* at 136:5-21. Furthermore,

---

[3] While *Ivanov* involved a trial and Defendant did not previously move for summary judgment, the case still stands for the broader proposition applicable here that a "full-time" label for a worker does not preclude a finding of independent contractor status. *Ivanov*, 2021 WL 2554620, at *10.

[4] Plaintiff also did not deny he was an independent contractor on July 20, 2018, nearly six months after the January 31, 2018 "full-time" text. Specifically, on July 20, 2018, Plaintiff requested paid vacation from Defendant-Counterclaimant Marie Napoli and she responded by stating: "Carlos, you are an independent contractor. Not an employee. I will talk to Paul." Plaintiff responded, "It's okay Mrs. Napoli, always thanks." *See* ECF 65-1 at P445.

Plaintiff admitted that while his initial rate of pay was $25 per hour for the Brookville property, he "ask[ed] for an increase" to $35 after three to four months, which he obtained. *Id.* at 135:9-136:4. Hence, this Court concludes that Plaintiff's setting his own pay for multiple properties shows a further lack of control.

Next, while Plaintiff had to "swipe in and out" of Defendants-Counterclaimants' homes, Plaintiff admitted that the finger scanners were for "security purposes," in addition to tracking hours. *See* Pl. R. 56.1 Counterstatement ¶ 38, ECF 64. It was also standard that "[t]radespeople and individuals who came to Defendants' homes – such as a trainer, therapist, or nurse – clocked in and out of a timekeeping system so that TPS could track and pay their bills." *Id.* at ¶ 36. Thus, this Court concludes the finger scanners do not show further control.

Turning to Plaintiff's work schedule, this Court concludes there is no factual dispute that Plaintiff had *ultimate* control over the days he worked. While Plaintiff alleges that Defendants-Counterclaimants controlled his schedule, Plaintiff conceded "Defendants did not set a daily schedule for Plaintiff." Opp. at 14, ECF 63. Additionally, while Plaintiff usually began his work days at 8:30 a.m. or 9:00 a.m., Plaintiff admitted that he generally "came and went as [he] pleased" and had "access to everything" he needed. Pl. Dep. Tr. at 238:16-18, ECF 62-1. The record shows Plaintiff declined to work on specific days due to having other clients, *see id.* at 238:10-15; chose not to work on certain weekends; *id.* at 152:6-16, and indicated that he planned to work at certain locations on certain days "based upon [his] schedule." *Id.* at 153:21-154:2. Notably, Plaintiff's Opposition only references approximately a dozen occasions over the course of a five-year period where Defendants-Counterclaimants asked Plaintiff to work on specific days and times, such as when Defendants-Counterclaimants were hosting a party or had another event occurring. Opp. at

15, ECF 63.  Per Plaintiff's several admissions and the record as a whole, this Court concludes there is no factual dispute that Plaintiff had ultimate control over his schedule.

Lastly, this Court concludes that the method in which Plaintiff obtained his work "orders" from Defendants-Counterclaimants' does not establish control because Plaintiff conceded that he was "free to decline work."  Pl. Dep. Tr. at 237:12-16, ECF 62-1.

b. *Worker's Opportunity for Profit/Loss*

This factor addresses whether Plaintiff "had a varying opportunity for profit (and risk of loss) in his work for Defendants, and, relatedly, whether he made personal investments in that work, such as by incurring his own business expenses. . ."  *Kinney v. Artist & Brand Agency LLC*, No. 13CV8864 (LAK) (DF), 2015 WL 10714080, at *15 (S.D.N.Y. Nov. 25, 2015), *report and recommendation adopted*, No. 13-CV-8864 (LAK), 2016 WL 1643876 (S.D.N.Y. Apr. 22, 2016). Here, the record shows that Defendants-Counterclaimants reimbursed Plaintiff for his business expenses when performing handyman tasks.  *See* Defs. Reply to Plaintiff's R. 56.1 Counterstatement ¶ 146, ECF 69.  However, Plaintiff admitted that he "hire[d] [his] own helpers" and "used [his] own tools."  *See* Pl. Dep. Tr. at 238:19-239:2, ECF 62-1.  This Court concludes that while there was at least a minimal financial risk of loss to Plaintiff, this factor does not significantly impact the independent contractor inquiry either way.

c. *Degree of Skill and Independent Initiative Required*

Once again, Plaintiff conceded that he possessed "a significant degree of skill and independent initiative to perform the tasks that [he was] given" and that he was "free to decline work." Pl. Dep. Tr. at 237:7-16, ECF 62-1.  Additionally, Plaintiff admitted that he knew how to complete these tasks "without any oversight" or Defendants' supervision.  *Id.* at 166:14-19; 236:16-237:11.  Plaintiff's tasks ranged in complexity and included painting, carpentry, power

washing, acid cleaning, fixing a roof requiring special sealant, fixing a wall which required replacement of sheetrock and plaster, installing special insulation, and grouting bathrooms. *Id.* at 173:20-174:7; Marie Napoli Dep. Tr. at 178:13-182:3, ECF 65-2; Warshaw Decl., Ex. E, at P32, P341-P343, ECF 62-2. This Court concludes that given the range of Plaintiff's tasks and Plaintiff's admission of the "significant degree of skill and independent initiative" required, this factor further supports that Plaintiff was an independent contractor.

### d. *Permanency and Duration of the Employment Relationship*

The parties' working relationship lasted for over 5 years, beginning in June 2013 and ending in November 2018. Pl. R. 56.1 Counterstatement ¶¶ 4, 110, ECF 64. As the Opposition correctly notes, a permanent exclusive relationship for several years favors a determination of employment. Opp. at 17, ECF 63 (citing *See Schwind v. EW & Assocs., Inc.*, 357 F. Supp. 2d 691, 702 (S.D.N.Y. 2005) (finding this factor supported employment because the plaintiff worked "*exclusively* for defendants for approximately four years") (emphasis added); *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 351 (E.D.N.Y 2015) (worked for close to 3 years on "essentially a full-time basis")).

However, as discussed *supra*, Plaintiff acknowledged that he maintained around 20 other clients while working for Defendants-Counterclaimants. Even more fundamentally, the Opposition's cited authority provides that the "permanence and duration" factor "is entitled to only modest weight in assessing employee status under the FLSA." *See Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 921 (S.D.N.Y. 2013) (finding employment status under FLSA and noting that "other courts have similarly accorded limited weight to this factor, in comparison with the others considered under the FLSA test."). Finally, recall that Plaintiff has admitted there were

periods of days, and sometimes weeks, before he would receive his next list of tasks.  *See* Pl. Dep. Tr. at 161:19-162:10; 167:13-15, 167:19-168:21, ECF 62-1.

 This Court concludes that while the 5-year duration favors employment status, this factor is entitled to "modest weight" under *Hart* compared to the other factors discussed above, which Plaintiff conceded to.  Moreover, facts such as the week-long gaps between Plaintiff's work assignments further undermine the continuity of the parties' working relationship.

 e. *Extent to Which Workers Are "Integral" to Employer's Business*

 This factor favors Defendants-Counterclaimants' position because the record shows there was no "business" in Defendants-Counterclaimants' home.  *Cf.  Luna v. HDMP LLC*, No. 13CV3325SLTRML, 2014 WL 12543796, at *4 (E.D.N.Y. Aug. 28, 2014) (finding Plaintiff was employee, in part, because her services were "integral to [business'] operations).  Here, Plaintiff was in "business for himself," meaning he only received compensation if he performed the services requested.  *McGuiggan v. CPC Int'l, Inc.*, 84 F. Supp. 2d 470, 479 (S.D.N.Y. 2000) ("In short, if the Plaintiffs were in business for themselves, they were not employees").

 f. *All factors*

 In sum, when considering "whether, as a matter of economic reality, [Plaintiff] depend[ed] upon someone else's business for the opportunity to render service or [was] in business for [himself]", it is abundantly clear to this Court that Plaintiff was in business for himself.  *Browning*, 885 F. Supp. 2d at 610 (quoting *Godoy v. Rest. Opportunity Ctr. of N.Y., Inc.*, 615 F. Supp. 2d 186, 192–93 (S.D.N.Y.2009)).  Because Plaintiff was "in business for himself," this Court concludes that if either party unilaterally terminated the parties' working relationship at any point, Plaintiff could "go out the next day with the same. . . equipment… and immediately work for another [client]."  *Id.* (quoting *Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 307 (E.D.N.Y. 2009)).

Again, there is no factual dispute that in the summer of 2018, Plaintiff had the opportunity to do many other jobs for himself, other clients, and another company. Pl. Dep. Tr. at 231:4-15, ECF 62-1.[5] Under the totality of the circumstances, this Court recommends that the District Court find that Plaintiff was an independent contractor under the FLSA.

### 2. NYLL

This Court also recommends an independent contractor determination under the NYLL. The NYLL defines an "employee" as "any person employed for hire by an employer in any employment," N.Y. Lab. Law § 190(2), and an "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." *Id*. § 190(3). In determining whether a worker is an employee or independent contractor under the NYLL, courts consider factors similar to those used in the FLSA inquiry, although with a slightly different emphasis. Specifically, courts consider the factors outlined in *Bynog v. Cipriani Group, Inc*., 1 N.Y.3d 193 (2003): "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." *Id*. at 198; *see also Browning*, 885 F. Supp. 2d at 598. Unlike the FLSA, which focuses on the economic reality of the relationship, "the critical inquiry in determining whether an employment relationship exists [under the New York Labor Law] pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Bynog*, 1 N.Y.3d at 198. Nevertheless, many courts have commented upon the similarity of the two tests, and some courts have even analyzed

---

[5] The Court notes that unlike in *Browning*, the Court does not have access to Plaintiff's tax documents to see whether Plaintiff listed himself as an independent contractor because Plaintiff objected to producing them. *See* Opp. at 10, ECF 63. However, this Court finds that notwithstanding this difference, *Browning* is still instructive in holding that service providers are independent contractors where they were free to accept or decline assignments, *Browning*, 885 F. Supp. 2d at 600; could hire their own workers to assist with their operations, *id.* at 601; were not subject to a fixed schedule, *id.* at 602 and were free to take on other jobs, *id.* at 603. Plaintiff has conceded these facts here.

the two together. *See, e.g.*, *Sellers v. Royal Bank of Canada*, 12 Civ. 1577(KBF), 2014 WL 104682, at *6 (S.D.N.Y. Jan. 8, 2014); *Browning*, 885 F.Supp.2d at 599; *Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 306–07 (E.D.N.Y. 2009).  In fact, "[n]otwithstanding the separate NYLL inquiry, . . . '[t]here is general support for giving FLSA and the New York Labor Law consistent interpretations.'"  *Hart*, 967 F. Supp. 2d at 924 (internal citations omitted).

Given New York courts' support for "consistent interpretations" under the FLSA and NYLL, this Court also recommends granting Defendants-Counterclaimants summary judgment and finding that Plaintiff was an independent contractor under the NYLL.  *See Greene v. Osterhoudt*, 251 A.D.2d 786, 787 (3d Dep't 1998) (affirming summary judgment and deeming handyman independent contractor where handyman provided general maintenance, construction, and repair work for a variety of individuals).[6]  While the emphasis slightly changes from the "economic reality" to "control," the Court's recommendation remains the same.  *Id.*[7]

## B. This Court Recommends Granting Defendants-Counterclaimants Summary Judgment on Plaintiff's Retaliation Claims.

This Court also recommends granting Defendants-Counterclaimants' Motion with respect to Plaintiff's retaliation claims because Plaintiff did not identify an adverse employment action under the FLSA or the NYLL.  Additionally, the record raises questions of whether Plaintiff acted in good faith with respect to these claims, which further supports this Court's recommendation.

Under the FLSA, it is "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [FLSA]."  29 U.S.C. § 215(a)(3).  "[A] plaintiff

---

[6] Again, this Court rejects the Opposition's attempt to distinguish *Greene* because the Third Department had access to Plaintiff's tax returns, *see* Opp. at 20, ECF 63, which Plaintiff objected to producing here.  *Greene* is still on point since the plaintiff worked for other individuals during the same period as his work for defendant.  *Id.* at 786-87.

[7] Based upon Plaintiff's independent contractor status, this Court also recommends granting summary judgment against Plaintiff's Third Claim of Failure to Notify Plaintiff of overtime rates.

alleging retaliation under [the] FLSA must first establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant . . .; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (citing *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)).  Additionally, Plaintiff's FLSA claim must be made in good faith. *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015) (absence of actual violation of FLSA bears on whether reasonable, objective person would have understood complainant to have asserted statutory rights).  Notably, while "[t]he Second Circuit has not resolved the issue" of whether individuals can bring retaliation claims against individuals who are not their employers under the FLSA, some New York courts have suggested the FLSA retaliation protections apply more broadly. *Bergman v. Kids By the Bunch Too, Ltd.*, No. 14CV5005DRHSIL, 2018 WL 1402249, at *8 n.4 (E.D.N.Y. Feb. 16, 2018), *report and recommendation adopted*, No. 14CV5005DRHSIL, 2018 WL 1401324 (E.D.N.Y. Mar. 20, 2018); *see also Savor Health, LLC v. Day*, No. 19-CV-9798 (RA), 2022 WL 912236, at *8 n.13 (S.D.N.Y. Mar. 29, 2022).  Given that the Second Circuit has not decided on the FLSA retaliation provision's scope, this Court will examine whether Plaintiff has alleged a prima facie retaliation claim.

Similarly, under the NYLL, an "employer . . . or any other person" may not retaliate against an employee because "such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of [the NYLL]."  N.Y. Labor Law § 215(1)(a)(i).  A plaintiff must therefore prove under the NYLL that, "while employed by the defendant, [the plaintiff] made a complaint about the employer's violation of the law and, as a result, was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action." *Copantitla v. Fiskardo*

*Estiatorio, Inc.*, 788 F. Supp. 2d 253, 302 (S.D.N.Y. 2011).

Plaintiff's two bases for an "adverse employment action" are that Defendants-Counterclaimants filed "baseless" counterclaims against Plaintiff and that Defendant-Counterclaimant Paul Napoli falsely told Plaintiff that he had given Plaintiff's address to ICE to intimidate Plaintiff from proceeding with this suit. *See* Opp. at 21-24, ECF 63.[8]

First, this Court concludes Defendants' counterclaims are not an adverse employment action. Several New York courts have found that compulsory counterclaims are not actionable adverse actions unless they are "totally baseless." *See, e.g.*, *Grauer v. UBS Fin. Servs., Inc.*, No. 07 CIV. 5450 (LAP), 2008 WL 11398936, at *8 (S.D.N.Y. Dec. 17, 2008) (citing *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 474 (S.D.N.Y. 2008)). "[T]o hold otherwise would discourage employers with legitimate claims against employees alleging discrimination from bringing suit, because doing so would inevitably subject them to charges of unlawful retaliation." *Id.* Here, Plaintiff has not even moved to dismiss the counterclaims, let alone shown that they are "entirely baseless." Moreover, the counterclaims are all compulsory since they arise from the same facts forming the basis of Plaintiff's Amended Complaint. Because Plaintiff has failed to "make a threshold showing" that the counterclaims lack foundation in either fact or law, this Court concludes that the counterclaims claims do not constitute an "adverse action." *Id.*

Second, this Court concludes that Paul Napoli's text message to Plaintiff stating that he gave ICE Plaintiff's address is also not an adverse employment action. Mr. Napoli's text message, dated January 31, 2019, provides: "ICE came to my house looking for you. I gave them your cell phone number and home address for you. Best, Paul." Paul Napoli Dep. Tr. at 141:2-11, ECF 65-5. Plaintiff's working relationship with Defendants-Counterclaimants ended in November 2018,

---

[8] Plaintiff concedes that Defendant-Counterclaimant Marie Napoli "did not retaliate against [him]." *See* Pl. Dep. Tr. at 243:11-13, ECF 62-1.

Pl. Dep. Tr. at 231:16-19., ECF 62-1, which is around two months before Mr. Napoli's text message. However, Mr. Napoli's text message came less than two weeks after Plaintiff sent his pre-litigation demand letter to Defendants-Counterclaimants, dated January 18, 2019. *See* Defs. Reply to Plaintiff's R. 56.1 Counterstatement ¶ 127, ECF 69.

New York courts have held that threatening to contact governmental and immigration authorities is sufficient to constitute a retaliatory act under the NYLL and FLSA. *See Santos v. E T & K Foods, Inc.*, No. 16CIV7107DLIVMS, 2017 WL 9256490, at *4 (E.D.N.Y. June 27, 2017) (allowing retaliation claim under NYLL based upon threat to report immigration status); *Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128, 130, 136 (W.D.N.Y. 2003) (holding same for FLSA). Yet, the undisputed facts show that Mr. Napoli never actually *threatened* or *initiated* any such contact with ICE. Importantly, Plaintiff admitted at his deposition that he does not know whether Mr. Napoli made up that ICE came to Defendants-Counterclaimants' home. Pl. Dep. Tr. at 244:5-245:23, ECF 62-1. In fact, Plaintiff said he is not sure whether he even "thinks" Mr. Napoli made it up. *Id.* at 245:17-20. When Plaintiff was asked about his basis for believing Mr. Napoli's statement was false, he did not provide any. *Id.* Plaintiff also conceded that ICE never contacted Plaintiff and to Plaintiff's knowledge ICE never came to his house. Pl. Dep. Tr. at 245:24-246:6, ECF 62-1.

Plaintiff's only cited authority for the proposition that reporting an individual to immigration authorities constitutes an adverse action is *Centeno-Bernuy*, 302 F. Supp. 2d at 136 where defendant reported the plaintiffs to the INS and made "baseless allegations" that plaintiffs are terrorists. Here, by contrast, Plaintiff does not claim that Defendants-Counterclaimants made any such "baseless allegation" to ICE about Plaintiff, but only that Mr. Napoli said he provided ICE with Plaintiff's address and contact information. Mr. Napoli's text message in question does

not mention any threat, that Defendants-Counterclaimants disclosed any details to ICE about Plaintiff's immigration status, or anything about Plaintiff's litigation demand letter.  Hence, this Court concludes that Mr. Napoli's text message is also not an adverse action.

Additionally, the Court concludes that Plaintiff's own text messages, at minimum, raise questions as to whether Plaintiff was acting in good faith.  As discussed *supra*, Plaintiff conceded that on February 5, 2018, while allegedly an "employee" of Defendants-Counterclaimants, he sent a text message to Ms. Anderson, one of his clients, asking for client recommendations, stating that "right now I do not have a job."  Pl. R. 56.1 Counterstatement ¶ 67, ECF 64.  Plaintiff's admission that he did "not have a job" for part of the time period in which he now claims he is entitled to overtime further supports the conclusion that Plaintiff did not suffer an adverse "employment' action.[9]

### C.  This Court Recommends that the District Court Decline to Exercise Supplemental Jurisdiction over Defendants' Counterclaims.

Defendants-Counterclaimants' Answer asserts five state law counterclaims against Plaintiff for breach of contract, unjust enrichment/restitution, breach of the implied covenant of good faith, and two claims of conversion.   Having recommended that summary judgment should be granted against Plaintiff's FLSA claims, this Court further recommends that supplemental jurisdiction should not be exercised over Defendants' counterclaims.  *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from

---

[9] This Court declines Defendant-Counterclaimants' request to strike paragraphs 211-214 of Plaintiff' Rule 56.1 Counterstatement, which references previous instances in which Defendants-Counterclaimants allegedly retaliated against other individuals in the past.  This Court concludes that even if those paragraphs are true, that does not cure the legal deficiency of Plaintiff's failure to allege an adverse action here.

exercising pendent jurisdiction.' " *Birch v. Pioneer Credit Recovery, Inc.,* No. 06–CV–6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 53 (2d Cir.1986)); *see also Young v. Suffolk Cnty.,* 922 F. Supp. 2d 368, 397–98 (E.D.N.Y. 2013).  Since no "exceptional circumstances" are present here, this Court concludes that declining to exercise supplemental jurisdiction over the counterclaims is appropriate.

### D. This Court Recommends That the District Court Decline to Issue Sanctions Both Under Rule 11 And the Court's Inherent Power.

Defendants-Counterclaimants have also moved for sanctions against Plaintiff and Plaintiff's counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure and the Court's inherent powers to manage its cases.  Defendants-Counterclaimants ask that the District Court impose sanctions on Plaintiff including, but not limited to, an award of Defendants-Counterclaimants' reasonable attorneys' fees incurred in connection with motion practice and their excess costs, expenses, and attorneys' fees reasonably incurred while defending themselves in this action, and grant any other relief deemed proper.  *See* Defs. Motion at 22-24, ECF 60.

#### 1. Rule 11

Sanctions under Federal Rule of Civil Procedure 11 may be warranted when an attorney, law firm, or party has demonstrated "objective unreasonableness."  *Toussaint v. NY Dialysis Servs.*, 230 F. Supp. 3d 198, 221–22 (S.D.N.Y. 2017) (quoting *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000)).  More specifically, Federal Rule of Civil Procedure 11 provides that, when an attorney or a party signs a pleading or other paper, the attorney or party certifies that, to the best of their knowledge or belief, and after a reasonable inquiry:

(1) [the pleading or other paper] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase in the cost of litigation;

(2) the claims . . . and other legal contentions are warranted by existing law or by a

nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

The decision of whether to impose sanctions is "committed to the district court's discretion." *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004). However, sanctions should be awarded sparingly. *Pannonia Farms, Inc. v. USA Cable*, 426 F.3d 650, 652 (2d Cir. 2005) ("Although the imposition of sanctions is within the province of the district court, any such decision should be made with restraint and discretion.") (internal quotation marks and alteration omitted).

More specifically, a Rule 11 sanctions motion may not properly substitute for a summary judgment motion. *Kim v. Kini LLC Corp*, No. 20CV6009LDHRER, 2022 WL 4596746, at *1 (E.D.N.Y. Sept. 30, 2022) (citing *Silverman v. Town of Riverhead*, No. CV073235SJFAKT, 2008 WL 11449317, at *6 (E.D.N.Y. Sept. 11, 2008), *report and recommendation adopted*, No. CV-07-3235(SJF)(AKT), 2008 WL 11450630 (E.D.N.Y. Sept. 29, 2008) (stating that the court is "cognizant of the oft-cited principle that a Rule 11 sanctions motion may not properly substitute for a motion to dismiss or a summary judgment motion" and holding that Rule 11 sanctions is not justified where, as here, "there are clearly factual and legal issues ... which clearly cannot and should not be decided at this juncture by the Court as part of a Rule 11 sanctions motion").

### 2.  Inherent Powers

Separately, where there has not been a qualifying failure to disclose under Federal Rule of

Civil Procedure 37(c), "a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002).   However, before exercising its inherent power, a "particularized showing of bad faith is necessary . . . ." *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 501 (S.D.N.Y. 2016) (citing *United States v. International Brotherhood of Teamsters*, 948 F.2d 1338, 1345 (1991)) (internal quotations omitted).

### 3. Defendants-Counterclaimants' Arguments

Virtually the entire basis of Defendant-Counterclaimants' Motion for Sanctions is that Plaintiff refused to withdraw his Amended Complaint and denial of Defendants' counterclaims, despite overwhelming evidence against Plaintiff's case. *See, e.g.*, Defs. Mot. at 23, ECF 60 ("The allegations contained in Plaintiff's Amended Complaint are patently and demonstrably false, as are Plaintiff's denials of Defendants' counterclaims" and further claiming that "[s]anctions under Rule 11 and the Court's inherent power are appropriate and warranted because Plaintiff and his counsel refuse to withdraw their claims").

As discussed *supra*, the Court respectfully recommends that summary judgment be granted in favor of Defendants-Counterclaimants with respect to Plaintiff's entire Amended Complaint. However, this Court does not conclude that Plaintiff's refusal to withdraw their Amended Complaint warrants sanctions.  For one, the undisputed facts showing Plaintiff's independent contractor status made this Court's summary judgment recommendation relatively straightforward. *See Blanch v. Koons*, 485 F. Supp. 2d 516, 518 (S.D.N.Y. 2007) (sanctions were not warranted where simple application of law disposed of case).

More importantly, however, this Court does not glean from the record that Plaintiff was, or is, motivated by an improper purpose in refusing to withdraw his Amended Complaint, even if

Plaintiff's arguments are ultimately unpersuasive.  For example, Defendants-Counterclaimants did, albeit carelessly in the Court's view, refer to Plaintiff as a "full-time" worker via text messages and considered placing Plaintiff on a "flat salary" after Plaintiff performed numerous handyman services for Defendants-Counterclaimants over the course of five years. Though this Court believes that these text messages do not raise a genuine dispute of material fact regarding Plaintiff's independent contractor status, evidence such as this leads this Court to conclude that Plaintiff's lawsuit does not constitute "objective unreasonableness" justifying Rule 11 sanctions. Likewise, the Court also recommends that the District Court should decline to use its inherent power to impose sanctions based upon Plaintiff's failure to withdraw his Amended Complaint because the record does not demonstrate any "particularized bad faith" separate from Defendants-Counterclaimants' allegations that Plaintiff's case is frivolous.

Defendants-Counterclaimants' only other basis for sanctions is that Plaintiff failed to comply with discovery obligations.  *See* Defs. Mot. at 10, ECF 60.  Plaintiff claims that discovery has closed and he does not need to produce his tax returns.  *See* Opp. at 10, ECF 63.  Again, given that this Court has recommended that summary judgment be granted against Plaintiff's Amended Complaint and no further discovery applications were made to the Court after discovery closed, *see* Defs. Reply to Plaintiff's R. 56.1 Counterstatement ¶ 210, this Court recommends that discovery sanctions should also be denied under both Rule 11 and the Court's inherent power.

## V.    CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Defendants' Motion for Summary Judgment be granted with respect to Plaintiff's Amended Complaint, that the District Court decline to exercise supplemental jurisdiction over Defendant's counterclaims and that Defendants' Motion for Sanctions be denied.

## VI.    OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                             /s/ Steven L. Tiscione
                             Steven L. Tiscione
                             United States Magistrate Judge
                             Eastern District of New York

Dated: Central Islip, New York
February 10, 2023